# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

CLIFFORD CLEVENGER,     )
                                     )
           Plaintiff,        )
                                     )     Cause No. 1:15-CV-337
          vs.             )
                                     )
CITY OF NORTH WEBSTER     )
POLICE DEPARTMENT, *et al.*,   )
                                     )
         Defendants.     )

## OPINION AND ORDER

This case results from an unfortunate typographical error made by a divorce court which led to Clifford Clevenger being arrested and jailed for a few hours, but then released without charges being filed. The court order at issue states a "provisional order" is terminated, when it apparently meant to say that the "protective order" was terminated. Clevenger was arrested at his son's school for violation of the protective order. He then brought suit against a bevy of defendants who can be cataloged into three groups: group one is the City of North Webster Police Department, Police Officer Church, and North Webster Chief of Police (the "North Webster Defendants"); group two is the Kosciusko County Sheriff's Department, Kosciusko County Sheriff Deputy Knafel and Sergeant Shepherd (the "Kosciusko Defendants"); and group three, the Wawasee Community School Corporation, North Webster Elementary and the acting principal Christie Holst (the "School Defendants"). Clevenger makes claims under

section 1983 and 1985 alleging Fourth Amendment violations of wrongful arrest, false imprisonment, and use of excessive force, as well as state law claims of assault, battery, false imprisonment, false arrest, and negligent infliction of emotional distress.

All three groups of defendants now seek summary judgment [DE 66, 70, 91]. There are also three motions to strike certain exhibits and portions of an affidavit [DE 85, 108, 115]. To summarize this longish opinion, the motions to strike are all denied as I can sift through the evidence myself and consider each piece under the applicable rules. The motions for summary judgment are all granted as the arresting officers are entitled to qualified immunity because they had, at the very least, arguable probable cause to make the arrest. As for the municipalities, they don't have liability under *Monell*, the use of force was reasonably necessary to make the arrest, and Plaintiff has not established a federal claim for false imprisonment. Because I have granted summary judgment for all of the defendants on the federal claims, I will dismiss without prejudice the state law claims.

## Factual Background

Clevenger was married to Heather DeSomer until 2012, when DeSomer filed a petition for dissolution of the marriage. Clevenger and DeSomer have five children, three of whom were minors as of December 2016, and DeSomer has physical custody over the minor children.

Clevenger and DeSomer's divorce is final; however, post-dissolution proceedings regarding issues like visitation and support are ongoing. [Clevenger Dep. at 7.] As part

of the post-dissolution proceedings, the dissolution court issued a Protective Order on November 8, 2012.  [DE 72-1.]  The Protective Order has Case No. 43C01-1211-PO-239 at the top, and states that Clevenger "is ordered to stay away from the residence, school, and/or place of employment of [DeSomer]."  *Id.*  The Protective Order expires two years after November 8, 2012.  *Id.*  DeSomer worked for the Wawasee Community School Corporation, at its North Webster Elementary School.  Her son, Caleb, went to school there as well.

About nine months later, the dissolution court issued an order, dated August 14, 2013 (the "August 2013 Order"), which is at the heart of this controversy.  [DE 72-2.] The order states, in pertinent part, that "[t]he Provisional Order entered by this Court under Cause Number 43C01-1211-PO-239 is hereby terminated."  *Id.*  Neither the words "Protective Order," nor the date of the Protective Order (November 8, 2012), are contained in this order.  There is in fact something known as a "provisional order" under Indiana divorce laws.  That is the order that is commonly entered by a court when a complaint seeking a divorce is first filed.  The purpose of the provisional order is to govern the rights of the parties while the divorce is pending but prior to its disposition.  *See Mosley v. Mosley*, 906 N.E.2d 928, 929-30 (Ind. Ct. App. 2009); Ind. Code § 31-15-4-14.  Hence the moniker "provisional." So the fact that the state court in this case said that the "provisional order . . . is hereby terminated" is not a fact that would have struck someone as odd.

On November 14, 2013, Clevenger was off work and was in Warsaw, Indiana,

3

close to North Webster Elementary School. [Clevenger Dep. at 39-40.] It was near

lunchtime, so he decided to stop by the school to visit his son, Caleb, and perhaps eat

lunch with him. *Id.* When he arrived at the school, Clevenger asked the receptionist,

Janette Fisher, when Caleb had lunch and if he could talk to Caleb. [*Id.* at 41, 43-45.]

Officials at the school knew about the protective order, and someone called the

North Webster Police Department to report Clevenger's presence and the potential

protective order violation. [Police Chief Church Aff. ¶ 3.] Officer Church responded by

going to North Webster Elementary School. [*Id.* ¶ 4.] Before he arrived, Officer Church

was advised by Central Dispatch that there was an active protective order in place,

preventing Clevenger from being at the school where his ex-wife worked. [*Id.* ¶ 5.]

While Officer Church was en route to the school, Christie Holst (wrongly pled as

North Webster School Employee "Holtz"), who was acting Principal, approached

Clevenger and asked why he was at the school. [Holst Aff. ¶ 10.] Clevenger said he

wanted to see his son, and according to Holst, he was "loud and belligerent and refused

to say why he wanted to see his son." [*Id.* ¶ 11.] Clevenger denies being loud or

disruptive. [Clevenger Aff. ¶ 15.] Holst claims she asked Clevenger to leave, and he

stated he wanted to have lunch with his son. [Holst Aff. ¶ 12.] Holst also claims she

told Clevenger Caleb's lunch period was not for another two hours, and he could not

remain on the premises [*Id.* ¶ 13], but Clevenger denies this and denies he was ever

asked to leave [Clevenger Aff. ¶ 10]. Holst escorted Clevenger to an office and asked

him to wait until Officer Church arrived. [Holst Aff. ¶ 14.] At some point during this

process, someone spoke to DeSomer and she also said that the Protective Order was no longer in effect.  [Compl. ¶ 15j.]

When Officer Church arrived on the scene, he asked Clevenger to come with him into another office, and then told Clevenger, "[y]ou know you're not supposed to be here," to which Clevenger replied, "if you're referring to the protective order it was vacated."  [Clevenger Dep. at 49; Church Aff. ¶ 6.]  Clevenger showed Officer Church a copy of the August 2013 Order.  [Clevenger Dep. at 55-56; Church Aff. ¶¶ 7-8.] The problem is that the paperwork said no such thing.  Indeed, Officer Church immediately recognized the fact that the order stated that a "provisional" order had been terminated not that the Protective Order had been terminated.  [Church Aff. ¶ 8.]

Sergeant Knafel with the Kosciusko County Sheriff's Department arrived next, and also talked with Clevenger.  Sergeant Knafel and Police Chief Church contacted Central Dispatch to confirm for a second time whether the Protective Order was still in effect.  [Church Aff. ¶ 10.]  Central Dispatch's records division again confirmed that the Protective Order was still in place, there was no record of the order being vacated, and faxed a copy of the Protective Order to the school.  *Id.*

Sergeant Knafel and Police Chief Church told Clevenger that the Protective Order was still in effect, but Clevenger disagreed.  [Clevenger Dep. at 75.]  During this exchange, Clevenger was using his cell phone to video and record his conversation with Police Chief Church and Sergeant Knafel.  [Clevenger Dep. at 76.] I have watched the DVD of the incident so there is not much room for doubt as to precisely what took

place.  *See* Exhibit F to the Kosciusko County Defendants' Designation of Evidence.
Here's what happened: Clevenger told the officers he was "just going to leave," at
which point Sergeant Knafel hit Clevenger's hand, knocking his phone to the ground.
[Clevenger Dep. at 76.]  Sergeant Knafel then grabbed Clevenger's arm, "crank[ed] it
behind [his] back," handcuffed Clevenger, and took him out of the school.  [*Id.* at 76-77,
81.]  Clevenger is not sure whether any other officer assisted Sergeant Knafel with the
handcuffing process.  [*Id.* at 85.] Clevenger was not injured when Sergeant Knafel
knocked the phone out of his hand "[o]ther than red marks and other things like that."
[Clevenger Dep. at 82.]   Aside from cranking his arm back, the officers did not use any
other force on Clevenger. [*Id.* at 85-86.]

Clevenger was transported to the Kosciusko County Jail by Officer Sheperd.
Clevenger was placed in a holding cell, but was released later the same day.  During the
time Clevenger was in the holding cell, the dissolution court issued another order.   It
must have recognized that the earlier order terminating the "provisional" order was an
error, because the new order specifically states that "[t]he *Protective* Order entered by
this Court under Cause Number 43C01-1211-PO-239 is hereby terminated."  [DE 72-6 at
1 (emphasis added).]  A copy of the Amended Order was then sent to the Kosciusko
County Sheriff's Department, and Clevenger was promptly released and no charges
were ever filed against him. *Id.*

## Discussion

I'll start with the motions to strike.  Three of them have been filed: (1) the

Kosciusko Defendants move to strike various paragraphs from the affidavit of Clifford A. Clevenger (Plaintiff's father) as inadmissible hearsay [DE 85 at 2]; (2) Plaintiff moves to strike Exhibit D (Plaintiff's discovery responses and letters requesting Plaintiff supplement the responses), as procedurally inappropriate under Federal Rule of Civil Procedure 37 [DE 108]; and (3) the School Defendants move to strike Exhibit B to Plaintiff's response to Defendants' motion for summary judgment (affidavit of Plaintiff Clifford Clevenger) as containing conclusory allegations and as an inappropriate way to set forth the statement of genuine disputes under Rule 56 [DE 115].

Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). I can consider the affidavits and exhibits without the need to employ a motion to strike.

With respect to the alleged hearsay objection, I only consider evidence that would be admissible at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). I can sift through the evidence and consider each piece under the applicable federal rules. Indeed, it is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g., SEC v. KPMG LLP*, 412 F.Supp.2d 349, 392

(S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor,* 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004).

Therefore, there is no need to strike any portion of the Defendants' or Plaintiff's evidence. So the motions to strike are all denied.

Let's move now to the meat of the case, the motions for summary judgment. Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, there are three separate motions for summary judgment, filed by the three groups of defendants. I will take each in turn, addressing the federal claims.

I.    **Group One: the North Webster Police Department Defendants[1]**

I'll begin by clearing out some underbrush. In his response, Clevenger dismisses his excessive force claim and Eighth Amendment claim against the North Webster Defendants, and dismisses the section 1983 and 1985 claims against the Chief of Police in his personal capacity, and nothing more needs to be said about those claims. [DE #79

---

[1] Clevenger sued both "North Webster Police Officer Church" and "North Webster's Chief of Police," yet these defendants are the same people. Officer Church is the Chief of Police for the City of North Webster. (Church Aff. ¶ 1.)

at 12.]

Clevenger first alleges that the North Webster Defendants violated his Fourth Amendment rights by arresting him without probable cause. To prevail on a section 1983 claim for false arrest, Clevenger must show there was no probable cause for his arrest. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). There appears to have been probable cause to have arrested Clevenger — whether by mistake or otherwise, an order of protection was in place and Clevenger was violating it. But in all events, the defense of qualified immunity torpedoes Clevenger's claims.

Qualified immunity allows law enforcement officers to do their jobs free from concerns that they may later be second-guessed and sued for actions reasonably taken. The immunity provides ample protection "to all but the plainly incompetent or those who knowingly violate the law." *Millspaugh v. Cnty. Dep't of Public Welfare of Wabash Cnty.*, 937 F.2d 1172, 1176 (7th Cir. 1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In essence, it lends an added layer of protection to officers by shielding them from "suit for damages if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963,

968 (7th Cir. 2003). Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

There is a two-part inquiry to determine if qualified immunity applies to the actions of a public official: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a constitutional violation; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011). I can address these in either order. *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009). In this case, I need only answer the second question to determine if Officer Church is entitled to qualified immunity.

To determine if a right was clearly established at the time of an alleged violation, I look at "whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). In the context of a wrongful arrest, the question is really whether the arresting officer had "arguable probable cause." *Jones*, 630 F.3d at 684. "Arguable probable cause exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest." *McComas v. Brickley*, 673 F.3d 722, 7265 (7th Cir. 2012) (emphasis in original).

In other words, as long as Police Chief Church reasonably believed, albeit possibly mistakenly, that he had cause to arrest Clevenger, then he is entitled to qualified immunity. Here, there is ample evidence to support Officer Church's belief

that Clevenger was violating an active protective order. Before he even arrived to the school, Officer Church was advised by Central Dispatch that there was an active protective order in place that prevented Clevenger from being there. At school, Officer Church listened to Clevenger's argument, and looked at the August 2013 Order that Clevenger showed him, but noted that the order did not state that the protective order had been terminated —rather, it said "the Provisional Order entered by this Court under Cause Number 43C01-1211-PO-239 is hereby terminated." Officer Church and Sergeant Knafel then contacted Central Dispatch for further confirmation that the Protective Order was still in place, and Central Dispatch's records division orally confirmed to him that the Protective Order was still in place, there was no record of the order being vacated, and then faxed a copy of the Protective Order to the school. The Protective Order received via fax was dated November 8, 2012, and stated it would remain valid for two years. Looking at the sum of this information available to Officer Church at that time, I think it was reasonable for him to believe the Protective Order was in effect, and that Clevenger's presence at the school violated the order.

Clevenger argues that Officer Church should have known the Protective Order was vacated. First, he claims the cause number "43C01-1211-PO-239" was indeed the docket number for the Protective Order, that provisional orders do not have cause numbers, and that even Clevenger's father, Clifford A. Clevenger, figured out within a few minutes that the Order's language — "[t]he Provisional Order entered by this Court under Cause Number 43C01-1211-PO-239 is hereby terminated" — could not have

really been referring to the provisional order, but rather intended to vacate the

Protective Order.   Clevenger argues "[a] reasonable officer could have made the s[a]me

discovery." [DE 79 at 7.]   I disagree.  I just don't think a reasonable officer could have

jumped through all those legal hoops to come up with the realization that "provisional

order" was actually a typographical error, and the court really meant "protective

order."  Indeed, Indiana law requires protective orders to be retained and accessible,

and then removed from the police's registry upon notice of termination of the protective

order.  Ind. Code §§ 5-2-9-5-5.5, 5-2-9-6.  Here, Officer Church was informed by Central

Dispatch that there was still a valid Protective Order on the books, and indeed there

was, at least until the judge recognized the error and issued an amended order. Officer

Church had the right to rely on what the order said.  It wasn't for him to rewrite the

order or second-guess the judge who issued it.

Clevenger's second line of argument is that the August 2013 Order was facially

"confusing," thus a reasonable officer would have investigated further.  I'm not sure

what more a reasonable officer would have done in this situation — Officer Church

confirmed *twice* with Central Dispatch that there was an outstanding Protective Order,

he had the order faxed to him, reviewed the terms, found them applicable, and

reviewed the August 2013 Order which did not specifically state that the Protective

Order had been terminated.  To the extent Clevenger argues that Defendants should

have sought out additional information or called the judge's chambers for qualification,

I disagree, and so have others when confronted with a similar claim:

> The Constitution does not require an arresting officer to conduct an incredibly detailed investigation at the probable cause stage. . . . Once an officer has trustworthy information that leads him to reasonably believe that probable cause exists, he is entitled to rely on that information and is under no further duty to investigate.

*Olig v. City of Hobart Police Dep't*, No. 2:08 cv 301, 2010 WL 3894108, at *6 (N.D. Ind. Sept. 30, 2010) (quotations and citations omitted).

What's more, if the August 2013 Order was really ambiguous or not facially clear, as Clevenger urges, then Officer Church could not have *knowingly* violated Clevenger's rights. *See Coons v. Gwinnett Cty.*, 657 F. App'x 856, 862 (11th Cir. 2016) (holding jail warden entitled to qualified immunity noting ambiguity in judicial orders regarding plaintiff's detention); *Hardy v. Runyon*, No. 1:10-CV-372, 2012 WL 602070, at *8 (N.D. Ind. Feb. 23, 2012) ("At most, the jailers committed a reasonable error in thinking that [plaintiff] needed to be detained until his ambiguous commitment order was clarified, and thus they are entitled to qualified immunity as a matter of law.").

As I have alluded to a couple of times, it is especially telling that the divorce court found it appropriate to amend the August 2013 Order. When Clevenger was in the holding cell, the court issued an amended order specifically stating that "[t]he Protective Order entered by this Court under Cause Number 43C01-1211-PO-239 is hereby terminated." [DE 72-6 at 1.] To me, this makes clear that the August 2013 Order did not actually vacate the Protective Order, and it was still in force and effect until the court fixed its mistake. So Officer Church wasn't really *mistaken* when he believed the protection order was still in effect. It was, at least until it was amended by the judge. But

even if one does not go that far, the amended order at least shows that the August 2013 Order was, if not incorrect, at least confusing. Either of these bases shows that the arresting officers had, if not probable cause, at the very least "arguable probable cause." *Jones*, 630 F.3d at 684.

The case of *Sutherland v. Bubrick*, No. 02 C 50231, 2002 WL 31870160 (N.D. Ill. Dec. 23, 2002), provides a helpful example in support. In *Sutherland*, the police pulled over Sutherland for speeding, and during a background check, discovered he was the subject of an active order of protection which listed his sons as protected persons. *Id.* at *2. One son was riding in the car with him at the time. The court explained that:

> [A]lthough the original ex parte protective order [his former wife] obtained had listed herself and the two children as protected persons, it was only in effect for a few weeks and a subsequent, plenary order - the one that was supposed to be in effect on May 4, 2002 - had removed [the children] as protected persons.

*Id.* The police checked with the dispatcher, who reported that the children were protected persons. *Id.* In the meantime, Sutherland called his ex-wife, who backed up everything he said - that the children were not supposed to be on the order of protection anymore, that she knew her son was with Sutherland and was fine with it, and she could bring the paperwork to the police station. *Id.* Nevertheless, the police arrested Sutherland for violating the protective order based on the information she had received from dispatch. As it turns out, Sutherland was right - due to a clerical error, the computer database had not been properly updated to reflect the children had in fact been removed as protected persons. Following a qualified immunity analysis, and

citing analogous cases, the court found that the officer could have properly relied on the dispatch report, and "that a reasonable police officer in the same circumstances and with the same knowledge Bubrick had *could* have reasonably believed that probable cause existed." *Id.* at *3 (emphasis in original). Similarly, a reasonable officer that had the same knowledge as Officer Church in the same situation could have reasonably believed probable cause existed.

Clevenger also brings claims against the City of North Webster Police Department and Police Chief Church in his official capacity. To the extent Clevenger has sued Officer Church in his official capacity, it is established law that those claims are treated as if the plaintiff has sued the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985). Thus, the claims against Officer Church in his official capacity are treated as claims against the City of North Webster Police Department.

Municipalities are only liable if they act pursuant to an unconstitutional custom, policy, or practice. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). A municipality cannot incur liability in an action under section 1983 merely because it employs a tortfeasor. *Monell*, 436 U.S. at 690-91. Both parties agree that those who employ police officers can be held liable pursuant to section 1983 only if there is:

> (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727 (7th Cir. 2014)

(citing *Estate of Sims v. Cnty. Of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)).

Clevenger baldly asserts that "[t]he facts listed above make it clear that such policy played a role in the events that led to Clevenger's arrest." [DE 79 at 13.]  This is a conclusion, not evidence. Clevenger fails to set forth any facts whatsoever regarding an alleged policy and its application or specifically set forth why this policy is supposedly unconstitutional. *See Martin v. Fort Wayne Police Dep't*, No. 1:11-CV-348 RM, 2013 WL 310298, at *3 (N.D. Ind. Jan. 25, 2013) (granting summary judgment "where [plaintiff] hasn't presented any evidence identifying any action, policy, or custom that would support a claim against the City of Fort Wayne, the Police Department, Mayor Henry or Police Chief York" finding he "can't rest upon the allegations in his original and amended complaints, and had to present evidence in an admissible form that, if believed, would support judgment in his favor.").  The record is devoid of any evidence that the police department customarily or habitually arrests people in arguably confusing situations like this one where a person insists the protective order is no longer in effect.   Finally, Clevenger has set forth no evidence showing the alleged policy, practice or custom caused his alleged constitutional deprivation. *See, e.g., Cook v. Lain*, No. 2:10-CV-411-PRC, 2013 WL 866876, at *14 (N.D. Ind. Mar. 7, 2013) (granting summary judgment in favor of sheriff defendant where plaintiff offered no evidence of express policy or custom, or that it caused the alleged constitutional deprivation).   And while Officer Church may be considered a policymaker, his actions were justified as

shown above.

Clevenger's final claim against the North Webster Defendants is under 42 U.S.C. section 1985 which provides a cause of action for conspiracies to deprive another of civil rights protected by the laws of the United States. None of the parties have given any argument to me about these claims in the complaint, and Clevenger certainly has not set forth any evidence to show there was a conspiracy. As such, summary judgment is also appropriate on these claims.

## II.     Group Two: the Kosciusko County Sheriff's Department Defendants

I'll begin with the claims against Sergeant Shepherd. Clevenger dismissed with prejudice any excessive force claim against Sergeant Shepherd. [DE 96 at 4.] What remains is a failure to intervene claim. There is a fundamental problem with this claim. While it seems that Sergeant Shepherd was present at the scene at the time Clevenger was taken into custody, Clevenger fails to provide me with any evidence in the record that Sergeant Sheperd was present during Clevenger's handcuffing. Indeed, Clevenger has offered no testimony as to Shepherd's presence, position, or possible conduct during the time that Clevenger was handcuffed.

Indeed, Clevenger actually concedes that "[t]he Plaintiff's testimony fails to create a reasonable inference that Sergeant Shepherd even witnessed that handcuffing and the purported level of force." [DE 96 at 5.] He then asks that I wait to decide this issue until it could be supplemented from Defendants' discovery answers which were due back in March 27, 2017. *Id.* Clevenger never filed a supplement, and Defendants

17

tell me that Plaintiff never served that written discovery. [DE 101 at 5.] "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quotation omitted).

To succeed on a failure to intervene claim, a plaintiff must show the officer is present and fails to intervene to prevent other law enforcement officers from infringing on his constitutional rights, and must show the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Mere allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court as evidence at the summary judgment stage. *See Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) (stating mere allegations of a complaint are not evidence, and contentions must be supported with citations to admissible evidence at the summary judgment stage). Here, where Clevenger has not provided me with any evidence at all about the whereabouts of Sergeant Shepherd, much less shown he had a realistic opportunity to intervene, this claim fails.

I'll move now to the claims against Sergeant Knafel. Clevenger says that Knafel violated his Fourth Amendment rights by arresting him without probable cause, but for reasons explained above, Sergeant Knafel is also protected by qualified immunity. Sergeant Knafel was present at the school when Central Dispatch orally confirmed the Protective Order was still intact, and when it faxed a copy of the order to the school. Like Officer Church, Sergeant Knafel relied upon the confirmation from Central

18

Dispatch, and had arguable probable cause to believe Clevenger was violating the Protective Order. *Jones*, 630 F.3d at 684.

Clevenger also states a claim for excessive force against Sergeant Knafel. It is well settled that "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). While "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 396.

A "police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006) (quoting *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). In evaluating whether the force used was excessive, the fact-finder must balance the intrusion to the individual with the government interests at stake. *Graham*, 490 U.S. at 396. In so doing, the Court must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* at 396-97. Specific facts to consider in determining whether a police officer used excessive force include the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or

others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

I do not believe Sergeant Knafel used excessive force when he slapped Clevenger's cell phone out of his hand and then handcuffed him. The incident did happen at a school, which carries an inherently higher degree of risk considering the proximity of children and the importance of protecting their safety. While Clevenger was not committing an egregious offense, the officers did have information to believe that he was violating an active protective order. Protective orders are very important and of course I consider it a priority to protect spouses involved in a divorce as well as children. While it is true that Clevenger did not resist arrest, he did seem to be upset and argumentative in the video clip I watched.

It's also true that the officers were argumentative and perhaps didn't use the best of judgment. But the actual force used was minimal, as Clevenger concedes that the only force Sergeant Knafel applied was when he slapped the phone out of Clevenger's hand, and then cranked Clevenger's arm behind his back when handcuffing him. As the court found in *Smith v. Augustine*, No. 07 C 81, 2009 WL 481639, at *6 (N.D. Ill. Feb. 25, 2009), "[t]he officers' acts of leaning her over the vestibule railing and knocking items out [of] her hands were incidental to her arrest and objectively reasonable." Moreover, there is no indication that Knafel used more force than was necessary to handcuff Clevenger, or that he slammed him against a wall or any other similar action. *See Radjen v. Parrish*, No. 2:08-cv-160-PRC, 2009 WL 3060206, at *8 (N.D. Ind. Sept. 21, 2009)

(finding no excessive force where officer "grabbed [plaintiff's] arms and attempted to put them behind her to handcuff her.").  In the middle of his opposition memorandum, Clevenger actually states: "[a]s to the 'cranking' of the Plaintiff's left arm behind his back.  Plaintiff dismisses with prejudice this allegation against Officer Knafel." [DE 96 at 11.]  Because the force used by Sergeant Knafel in arresting Clevenger, removing his cell phone, and applying handcuffs was reasonable under the circumstances, summary judgment is proper in favor of the defendants.

Finally, although it is unclear from the complaint and the briefing, to the extent Clevenger has alleged federal claims against the Kosciusko County Sheriff's Department, these also fail as neither Sergeant Shepherd nor Knafel violated federal law.

III.  **Group Three: The School Defendants**

Clevenger's federal claims against the School Defendants are the weakest of the bunch. Clevenger states that he is dismissing all claims against the School Defendants "except the claims of false imprisonment and the 42 U.S.C. 1983." [DE 105 at 1.]  "[A] plaintiff may establish both a § 1983 claim and an Indiana false imprisonment claim where his freedom of movement was limited or restrained in some way without probable cause."  *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009).  The elements of the causes of action are nearly identical, and in this case, it seems Clevenger is claiming violation of both Indiana and federal law in his false imprisonment claim.

First, it does not seem that Acting Principal Holst limited or restrained

21

Clevenger's freedom of movement. She escorted him into an office and asked him to wait until Officer Church arrived. (Holst Aff. ¶ 14.) There are two doors in that office, neither of which can be locked from the outside. (*Id.* ¶ 15.) Clevenger has not provided any evidence to show he did not consent to being escorted to the office, or that he was being held against his will. By his admission, Clevenger did not even see if the door was locked or whether he could leave the room. (Clevenger Aff. ¶ 15.)

Second, let's suppose that Clevenger could establish a federal claim for false imprisonment (and I do not believe he can), Holst would still be entitled to qualified immunity. A principal of a school is a public official who is entitled to qualified immunity for claims alleged under section 1983. *T.V. ex rel. B.V. v. Smith-Green Cmty. Sch. Corp.*, 807 F.Supp.2d 767, 786-87 (N.D. Ind. 2011).

Finally, like the other municipalities in this lawsuit, the Wawasee Community School Corporation and the school cannot be held liable solely under the doctrine of respondeat superior. *Monell*, 436 U.S. at 691. Clevenger has not identified any express policy, common practice, or that a person with final policy-making authority caused a constitutional injury. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

## IV. <u>State Law Claims</u>

Clevenger has also alleged state law claims for assault, battery, false imprisonment, false arrest, and negligent infliction of emotional distress against the defendants (although it is unclear from his briefs in opposition if he still intends to pursue all of these state law claims). The Court has granted judgment in favor of all the

defendants on Plaintiff's federal claims, which were the sole basis for federal jurisdiction in this action. The parties are not diverse. Therefore, I must decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Upon due consideration, the state law claims are **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); *see also Williams v. Fort Wayne Police Dep't Officers John/Jane Does*, No. 1:12-CV-202, 2012 WL 6727534, at *3 (N.D. Ind. Dec. 27, 2012).

### Conclusion

For the reasons set forth above, the motions for summary judgment [DE 66, 70, 91] are all **GRANTED** and the Clerk is **ORDERED** to dismiss the federal claims against all of the defendants **WITH PREJUDICE**. Plaintiff's state law claims against the defendants are **DISMISSED WITHOUT PREJUDICE** to refiling in state court. The motions to strike [DE 85, 108, 115] are all **DENIED**. The Clerk is **ORDERED** to **CLOSE** this case.

**SO ORDERED**.
      ENTERED: August 14, 2017

                    /s/ Philip P. Simon
                    **PHILIP P. SIMON, JUDGE**
                    **UNITED STATES DISTRICT COURT**